UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHLOMO Y. HECHT, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION - LAW |
| | : | |
| - against - | : | |
| | : | JURY TRIAL DEMANDED |
| BABYAGE.COM, INC., | : | |
| JACK KIEFER, and | : | |
| JOSEPH SPONHOLTZ, | : | |
| | : | No. |
| Defendants. | : | |

COMPLAINT

Plaintiff Shlomo Y. Hecht ("Mr. Hecht"), by and through his counsel,

Barry H. Dyller, Esq. and Kelly A. Bray, Esq. of the Dyller Law Firm, hereby

complains against Defendants BabyAge.com, Inc. ("BabyAge"), John

Kiefer and Joseph Sponholtz, in support thereof avers the following:

JURISDICTION AND VENUE

1.  This action arises out of violations of 42 U.S.C. §1981 and the

common law.

2.  This Court has jurisdiction over this action pursuant to 28 U.S.C.

§§ 1331, 1343 and 1367.  Venue is proper in this judicial district under 28

U.S.C. § 1391(b) because a substantial part of the events or omissions

giving rise to the claim occurred in this judicial district.

Case 3:02-at-06000   Document 444   Filed 04/05/2010   Page 2 of 12

## THE PARTIES

3.  At all times relevant hereto, plaintiff Mr. Hecht was an adult individual residing at 10 Downing Drive, Dallas, PA.

4.  Upon information and belief, defendant BabyAge, is a corporation organized and existing under the laws of the State of Delaware, duly authorized as a domestic corporation to conduct business in the Commonwealth of Pennsylvania, with a principal place of business located at 360 Stewart Road, Wilkes-Barre, PA.

5.  Defendant Jack Kiefer ("Mr. Kiefer") is employed by BabyAge as its Chief Executive Officer.

6.  Defendant Joseph Sponholtz ("Mr. Sponholtz") is employed by BabyAge as its Chief Operating Officer and General Counsel.

7.  Upon information and belief, the defendants each are residents of the Commonwealth of Pennsylvania.

## BACKGROUND

8.  On or about May 8, 2008, Mr. Hecht was retained as the Chief Technology Officer for BabyAge.  Although such retention was as a

Case 3:02-at-06000   Document 444   Filed 04/05/2010   Page 3 of 12

"consultant," BabyAge made Mr. Hecht its Chief Technology Officer. (Consulting Agreement attached hereto as Exhibit "A").

9.  As part of his retention BabyAge issued Mr. Hecht business cards which identify  him as the Chief Technology Officer.  (Attached hereto as Exhibit "B").

10.  Mr. Hecht was retained by BabyAge for a period of three years, with yearly compensation of $150,000.00.

11.  As Chief Technology Officer, Mr. Hecht solely wrote, rewrote and maintained BabyAge's entire software and fulfillment system.

12.  Mr. Hecht was on call twenty-four hours per day, seven days per week in order to maintain BabyAge's software and its website.

Religious/Ethnic Discrimination by BabyAge, Mr. Kiefer and Mr. Sponholtz

13.  Mr. Hecht is Jewish.

14.  On or about January 2009, BabyAge's acting Chief Executive Officer Jack Kiefer confronted Mr. Hecht and stated in an angry tone that he did not want a "Jew Boy Club" in the office.

15.  Mr. Kiefer repeatedly expressed negativity against the Jewish holidays and made it clear to Mr. Hecht he did not want him to observe Jewish holidays and/or take vacation days on Jewish holidays.

Case 3:02-at-06000   Document 444   Filed 04/05/2010   Page 4 of 12

16.  Mr. Kiefer repeatedly referred to Mr. Hecht and other Jewish employees as "fucking Jews" and the "blood sucking tribe."

17.  BabyAge's Chief Operating Officer and General Counsel Joseph Sponholtz repeatedly referred to Mr. Hecht and other Jewish employees as "fucking Jews."

18.  Mr. Keifer and other BabyAge executives plotted to eliminate all Jewish employees in high level positions at BabyAge, including Mr. Hecht.

19.  Mr. Keifer stated to Mr. Hecht that a certain employee was fired because he was a "typical fucking Jew, that is corrupt through and through."

20.  Mr. Hecht suffered disparate treatment while he was retained as the Chief Technology Officer for BabyAge due to his Jewish religion/ethnicity.

21.  Mr. Hecht endured severe and pervasive harassment, which created a hostile working environment based on his Jewish religion/ethnicity.

22.  BabyAge, Mr. Kiefer and Mr. Sponholtz made a concerted effort to rid the company of Jews in high level positions.

Case 3:02-at-06000 Document 444 Filed 04/05/2010 Page 5 of 12

BabyAge's Breach of Mr. Hecht's Contract

23.  On or about August 25, 2009, Mr. Hecht was approached by Jack Kiefer and was verbally informed his contract had been terminated.

24.  Mr. Hecht was discharged, and otherwise discriminated against with respect to the terms, conditions or privileges of his retention with BabyAge because of his Jewish religion/ethnicity.

25.  On or about September 4, 2009, BabyAge filed a civil action against Mr. Hecht alleging various claims against Mr. Hecht during his retention with BabyAge.

26.  The claims alleged in the civil action were pretexts to terminate an expensive three year contract.

27.  On December 16, 2009, facing Mr. Hecht's vigorous defense of BabyAge's pretextual lawsuit, BabyAge voluntarily dismissed the lawsuit.

BabyAge's, Mr. Kiefer's and Mr. Sponholtz's Defamation of Mr. Hecht's Character

28.  On or about August 25, 2009, Mr. Sponholtz and Mr. Kiefer made a statement in front of roughly 45 BabyAge employees that Mr. Hecht was fired because he was a thief.

Case 3:02-at-06000 Document 444 Filed 04/05/2010 Page 6 of 12

29. Mr. Sponholtz and Mr. Kiefer repeated these statements numerous times to various consultants and third party vendors with whom Mr. Hecht worked while retained by BabyAge.

30. Mr. Hecht in fact had not stolen anything and was not a thief of any kind.

## Breach of Fiduciary Duty by Corporation to Officer

31. Mr. Hecht incurred costs in defending the civil action filed by BabyAge.

32. Article 9, Section 9.4 of BabyAge's by-laws, provides as follows:

> Advancement of Expenses. Expenses incurred in defending a civil or criminal action or proceeding of the type described in Section 9.1 [Persons Entitled to Indemnification. Every person who... "was a director or **officer** of the Corporation"...] shall be paid by the Corporation in advance of the final disposition of such action or proceeding upon receipt of an undertaking by or on behalf of the person requesting such advance to repay such amount in the event that such person is ultimately found not to be entitled to indemnification or, where indemnification is granted, to the extent the expenses so advanced by the Corporation or allowed by a court exceed the indemnification to which a person is entitled.

Case 3:02-at-06000   Document 444   Filed 04/05/2010   Page 7 of 12

BabyAge was thus required to advance expenses incurred, including attorney's fees, in defending any civil action against Mr. Hecht relating to his time as an officer of BabyAge.  (BabyAge's by-laws are attached hereto as Exhibit "C").

33.  On or about October 23, 2009, Mr. Hecht submitted a request to John Keifer, Chief Executive Officer of BabyAge, requesting advancement of expenses to defend the lawsuit filed against him by BabyAge on September 4, 2009.  (Letter attached hereto as Exhibit "D").

34.  On or about November 2, 2009, legal counsel for BabyAge responded to Mr. Hecht's letter, denying his request for advancement of expenses.  (Letter attached hereto as Exhibit "E").

35.  On or about December 16, 2009 BabyAge filed a Discontinuance Without Prejudice in its civil action against Mr. Hecht.  (Attached hereto as Exhibit "F").

36.  On or about December 23, 2009, Mr. Hecht submitted a request to John Keifer requesting payment of Mr. Hecht's legal  expenses incurred in defending the lawsuit filed against him by BabyAge on September  4, 2009.  (Letter attached hereto as Exhibit "G").

Case 3:02-at-06000   Document 444   Filed 04/05/2010   Page 8 of 12

37.  On or about December 28, 2009, legal counsel for BabyAge responded to Mr. Hecht's letter, refusing to pay his invoice for professional services rendered.  (Letter attached hereto as Exhibit "H").

38.  Mr. Hecht is entitled to the payment of legal expenses incurred in defending the civil action.

The Effect on Mr. Hecht

39.  Mr. Hecht suffered economic harm.  Mr. Hecht also suffered emotional harm.

COUNT ONE
(42 U.S.C. §1981)

40.  Plaintiff  repeats and realleges each  and every  allegation contained in paragraphs 1 through 39 as if fully repeated herein.

41.  Defendants intentionally discriminated against Mr. Hecht because of his Jewish religion/ethnicity.

42.  Defendants Kiefer and Sponholtz caused defendant BabyAge to terminate, and BabyAge did terminate, Mr. Hecht's contract because of his Jewish religion/ethnicity.

43.  As a result of such discrimination, Mr. Hecht  was damaged.

Case 3:02-at-06000   Document 444   Filed 04/05/2010   Page 9 of 12

## COUNT TWO
### (Breach of Contract)

44.  Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 43 as if fully repeated herein.

45.  Mr. Hecht entered into a valid, enforceable contract with BabyAge.

46.  BabyAge's nonperformance of said contract amounted to a breach of contract.

47.  As a result of the breach of contract, Mr. Hecht was damaged in the amount of $255,205.35.

## COUNT THREE
### (Breach of Fiduciary Duty by Corporation to an Officer)

48.  Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 47 as if fully repeated herein.

49.  BabyAge owed Mr. Hecht a fiduciary duty to advance expenses incurred, including attorney's fees, in defending any civil action against Mr. Hecht relating to his time as an officer of BabyAge.

50.  BabyAge refused to advance or remit payment for Mr. Hecht's legal expenses incurred in defending the civil action filed by BabyAge.

Case 3:02-at-06000   Document 414   Filed 04/05/2010   Page 10 of 12

51. As a result of the breach of fiduciary duties, Mr. Hecht was damaged in the amount of $11,924.94.

## COUNT FOUR
### (Defamation)

52.  Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 51 as if fully repeated herein.

53.  Defendants published defamatory communications about Mr. Hecht.

54.  Such defamatory communications harmed Mr. Hecht's reputation and lowered him in the estimation of the community.  They also deterred third persons from associating or dealing with him.

55.  As a result of such defamatory communications, Mr. Hecht  has suffered economic damage, as well as impairment of reputation in the community, personal humiliation and mental anguish and suffering.

## COUNT FIVE
### (Invasion of Privacy)

56.  Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 55 as if fully repeated herein.

57.  The statements produced and published by the defendants gave publicity to a matter whereby defendants placed Mr. Hecht in a false light which is highly offensive to a reasonable person.

58.  Defendants had knowledge of and/or acted in reckless disregard as to the falsity of the publicized matter and the false light in which Mr. Hecht would be placed.

WHEREFORE, plaintiff demands judgment as follows:

A.   For Count One, an amount to be determined at trial, including punitive damages, plus interest;

B.   For Count Two, $255,205.35, plus interest;

C.   For Count Three, $11,924.94, plus interest;

D.   For Count Four, an amount to be determined at trial, including punitive damages, plus interest;

E.   For Count Five, an amount to be determined at trial, including punitive damages, plus interest;

F.   For plaintiff's attorneys' fees pursuant to 42 U.S.C. § 1988;

G.   For the costs and disbursements incurred in this action; and

H.     For  such other and further relief as the Court deems just

and proper.

DYLLER LAW FIRM

/S/ Barry H. Dyller
/S/ Kelly A. Bray
Attorney for Plaintiff
Gettysburg House
88 North Franklin Street
Wilkes-Barre, PA  18701
(570) 829-4860

JURY DEMAND

Plaintiff demands a trial by jury on all issues.