# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHLOMO Y. HECHT, | : | No. 3:10cv724 |
|     Plaintiff | : | |
| | : | (Judge Munley) |
|     v. | : | |
| BABYAGE.COM, INC.; | : | |
| JACK Keifer; and | : | |
| JOSEPH SPONHOLTZ, | : | |
|     Defendants | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court is plaintiff/cross-defendant Shlomo Hecht's motion for a preliminary injunction. Having been fully briefed, the matter is ripe for disposition.

**Background**

This case arises out of Plaintiff Shlomo Hecht's employment with Defendant BabyAge.com ("BabyAge"). According to plaintiff's complaint, defendants retained him as Chief Technology Officer for BabyAge on May 8, 2008. (Complaint (Doc. 1) (hereinafter "Complt.") at ¶ 8). Though plaintiff had been retained as a "consultant," he received the Chief Technology Officer title. (Id.). BabyAge issued plaintiff business cards that identified him as Chief Technology Officer. (Id. at ¶ 9). The company retained plaintiff for three years, at a salary of $150,000 per year. (Id. at ¶ 10). Plaintiff wrote, rewrote and maintained BabyAge's software and fulfillment system. (Id. at ¶ 11). He remained on call twenty-four hours a day, seven days a

week. (Id. at ¶ 12).

Plaintiff alleges he suffered religious discrimination at work. He is Jewish. (Id. at 13). Sometime in January 2009, BabyAge's Chief Executive Officer Defendant Jack Keifer confronted plaintiff, telling him "in an angry tone" that Keifer "did not want a 'Jew Boy Club' in the office." (Id. at ¶ 14). Keifer also repeatedly "expressed negativity" about Jewish holidays and made clear to plaintiff that Keifer disapproved of plaintiff observing such holidays or taking vacation days to celebrate them. (Id. at ¶ 15). Keifer also allegedly used offensive language about Jewish people, calling them "fucking Jews" and members of a "blood sucking tribe." (Id. at ¶ 16). BabyAge's Chief Operating Officer and General Counsel, Defendant Joseph Sponholtz, likewise allegedly used such language, referring to plaintiff and other Jewish employees as "fucking Jews."  Plaintiff also alleges that Keifer and other BabyAge executives schemed to eliminate all high-level Jewish employees from BabyAge, including him. (Id. at ¶ 18). He insists that Defendant Keifer told him that a certain employee had been fired "because he was a 'typical fucking Jew, that is corrupt through and through.'" (Id. at ¶ 19). Plaintiff therefore contends that he suffered "disparate treatment" and "severe and pervasive harassment" as a result of his Jewish religion/ethnicity. (Id. at ¶¶ 20-21).

Plaintiff also alleges that BabyAge breached the employment contract between the parties. On August 25, 2009, Keifer approached plaintiff and verbally informed him that his employment contract had been terminated. (Id. at ¶ 23).

2

Plaintiff maintains that defendants terminated him because of his Jewish religion/ethnicity. (Id. at ¶ 24). BabyAge filed a civil action against plaintiff, alleging various claims during his employment with the company. (Id. at ¶ 25). These claims, plaintiff contends, served as pretext to realize defendants' goal of terminating his expensive three-year contract. (Id. at ¶ 26). Plaintiff defended himself in that lawsuit, and on December 26, 2009 BabyAge voluntarily dismissed the case. (Id. at ¶ 27). Plaintiff incurred expenses in defending this civil action, and he insists that his contract with BabyAge obligated the company to indemnify him for these expenses. (Id. at ¶¶ 31-32). Plaintiff requested this compensation, but the company refused to pay. (Id. at ¶¶ 33-34).

On August 25, 2009, Defendants Sponholtz and Keifer allegedly told forty-five BabyAge employees that plaintiff had been fired because he was a thief. (Id. at ¶ 28). Defendants allegedly repeated these statements numerous times to consultants and third-party vendors with whom plaintiff had worked during his employment at BabyAge. (Id. at ¶ 29). Plaintiff insists that he had not stolen anything from BabyAge and was not a thief of any kind. (Id. at ¶ 30). Plaintiff contends that defendants' actions caused him economic harm and severe emotional distress. (Id. at ¶ 39).

Plaintiff's complaint contains five counts. Count I alleges that defendants discriminated against the defendant because of his religion in violation of 42 U.S.C. § 1981. Count II alleges a breach of plaintiff's employment contract against the

3

defendants. Count III alleges that defendants breached their fiduciary duty to plaintiff, as an officer of the corporation, when they refused to indemnify him for the expenses incurred in the previous lawsuit. Count IV alleges defamation of character. Count V claims invasion of privacy.

Defendants then answered the complaint, and Defendant BabyAge filed a counterclaim. (See Doc. 19). That counterclaim is the subject of the instant motion for a preliminary injunction. In the counterclaim, BabyAge alleges that plaintiff received access to the company's trade secrets upon being hired as a consultant, including BabyAge's "proprietary database scheme, back-end management system, and source codes." (Id. at ¶60). BabyAge contends that plaintiff used this proprietary information for his own benefit and for the benefit of BabyAge competitors such as GiftBrand.com and idiapers.com. (Id. at ¶ 61). The company further contends that BabyAge took reasonable steps to protect the trade secrets by instituting polices to regulate their access and dissemination. (Id. at ¶ 62). Plaintiff had access to these trade secrets, and BabyAge alleges that he provided this information to GiftBrand.com, a company he and his wife owned. (Id. at ¶¶ 64-65). Plaintiff used BabyAge's trade secrets to benefit a competitor and damage BabyAge. (Id. at ¶ 66). Such actions, BabyAge contends, constituted a misappropriation of trade secrets and a breach of the consulting agreement. (Id. at ¶ 69). BabyAge also contends that plaintiff's actions constituted unfair competition under Pennsylvania law and violated the Federal Computer Fraud and Abuse Act. (Id. at ¶¶ 74, 81).

4

The counterclaim also raises counts of breach of contract, breach of duty of loyalty and breach of fiduciary duty.

Plaintiff filed a motion to dismiss this counterclaim. (Doc. 22). He also filed the instant motion for a preliminary injunction. (Doc. 30). In that motion, plaintiff contends that BabyAge retained him as its chief technology officer. According to the company's by-laws, officers and directors are entitled to indemnification for costs of defending a civil or criminal action. Plaintiff therefore contends that, as an officer of the company, he is entitled to be paid his attorney's fees and costs for defending these counterclaims. He sought such payment from defendant, but BabyAge refused. Plaintiff's motion for a preliminary injunction seeks an order from the court requiring BabyAge to advance plaintiff his costs and attorney's fees in defending the counterclaim.

**Jurisdiction**

Plaintiff brings this claim pursuant to the 42 U.S.C. § 1981. This court therefore has jurisdiction pursuant to 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The court has jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) ("In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article

II of the United States Constitution.").

**Legal Standard**

Plaintiff seeks a preliminary injunction. The Third Circuit Court of Appeals has outlined four factors that a court ruling on a motion for a preliminary injunction must consider: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest. Crissman v. Dover Downs Entertainment Inc., 239 F.3d 357, 364 (3d Cir. 2001).

The above factors merely "structure the inquiry" and no one element will necessarily determine the outcome. The court must engage in a delicate balancing of all the elements, and attempt to minimize the probable harm to legally protected interests between the time of the preliminary injunction to the final hearing on the merits. Constructors Association of Western Pa. v. Kreps, 573 F.2d 811, 815 (3d Cir.1978). The movant bears the burden of establishing these elements. Adams v. Freedom Forge Corp., 204 F.3d 475, 486 (3d Cir. 2000).

**Discussion**

The court will address each of these four factors in turn.

**i. Likelihood of Success on the Merits**

Plaintiff argues that he is entitled to a preliminary injunction because his

6

contract with Defendant BabyAge requires that he be indemnified for expenses incurred in defending the counterclaim. He points to Article 9, Section 9.4 of BabyAge's by-laws, which provides that the company will advance to any director or officer the expenses incurred in defending a civil or criminal action or proceeding.[1] Since the defendant named him Chief Technology Officer, plaintiff insists that he is entitled to these expenses under the corporate bylaws. He points to several cases that he claims hold that advancement of such expenses is appropriate and should be ordered through a preliminary injunction. Defendant responds by arguing that the facts establish that plaintiff was never an officer of the corporation, but was instead a consultant. Company bylaws require the Board of Directors to elect plaintiff to make him an officer, and the board did not do so. Even if plaintiff was an elected officer, defendant insists that the bylaws do not require advancement of legal expenses, since the counterclaim is about plaintiff's personal conduct, not his conduct as an officer.

Because, as explained below, injunctive relief is unnecessary to protect plaintiff's interests in this matter, the court finds addressing these arguments in detail

---

[1] The provision provides that: "Advancement of Expenses. Expenses incurred in defending a civil or criminal action or proceeding of the type described in Section 9.1 [Persons Entitled to Indemnification. Every person who . . . "was a director or officer of the Corporation" . . . ] shall be paid by the Corporation in advance of the final disposition of such action or proceeding upon receipt of an undertaking by or on behalf of the person requesting such advance to repay such amount in the event that such person is ultimately found not to be entitled to indemnification or, where indemnification is granted, to the extent the expenses so advanced by the Corporation or allowed by a court exceed the indemnification to which a person is entitled." (Exh. 2 to Plaintiff's Motion for a Preliminary Injunction (Doc. 30)).

7

unnecessary at this point in the litigation. The disagreement here between the parties is largely over plaintiff's position within the company. Defendant insists that defendant was never an officer or director, while plaintiff contends that he was informed he occupied an officer's position and that he received business cards and other indications of this status. Resolving this question appears central not only to plaintiff's motion for a preliminary injunction, but also to plaintiff's claims against the defendant for breach of fiduciary duty. Without more evidence obtained through the discovery process, the court cannot determine whether plaintiff was an officer and eligible for indemnity. Thus, the likelihood of success on the merits of the claim does not weigh for or against granting an injunction. At this preliminary stage, nothing in this opinion should indicate that the court has resolved this question in any final way.

### ii. Irreparable Harm

Plaintiff also argues that he will suffer irreparable harm if the court fails to order this indemnity be paid. If forced to defend the claims in court, defendant will incur expenses he cannot afford to pay. If that situation were to occur, defendant would not be able properly to defend the claims against him and a fair outcome of the instant action would not be achieved. Plaintiff does not point to any caselaw to support this proposition. Defendant responds that plaintiff cannot demonstrate irreparable harm, since damages would be available to him if the company had a contractual duty to provide for his defense.

The court finds that this factor weighs heavily against granting the preliminary

8

injunction. Plaintiff's claim here is in the nature of a breach-of-contract action.[2] He contends that his employment as "Chief Technology Officer" invoked a duty to indemnify contained in the by-laws of BabyAge. Failure to provide for plaintiff's defense allegedly violated the corporate bylaws and injured plaintiff. The Third Circuit has found that "[w]hen the claim is based on a breach of contract, irreparable injury may be found in two situations: (1) where the subject matter of the contract is of such a special nature of peculiar value that damages would be inadequate; or (2) where because of some special and practical features of the contract, it is impossible to ascertain the legal measure of loss so that money damages are impracticable." Ecri v. McGraw-Hill, 809 F.2d 223, 226 (3d Cir. 1987). Here, plaintiff's complaint is that defendant refuses to provide for plaintiff's litigation expenses as required by the company's bylaws. The loss to the plaintiff under those circumstances is certainly measurable and can be ascertained at the conclusion of this matter by examining his attorney's billing records. In any case, "[t]he availability of adequate monetary damages belies a claim of irreparable injury." Frank's GMC Truck Center, Inc. v. General Motors Corp., 847 F.2d 100, 102 (3d Cir. ). "[A] purely economic injury,

---

[2]Under Pennsylvania law, parties create a contract when "the parties reach mutual agreement, exchange consideration and have outlined the terms of their agreement." Greene v. Oliver Realty, Inc., 1193 (Pa. Super. Ct. 1987). A breach of contract claim exists when a plaintiff pleads: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." Corestates Bank, N.A. v. Cutillo, 732 A.2d 1053, 1058 (Pa. Super. Ct. 1999). The situation that plaintiff describes here, where his position as an alleged "officer" of the company invokes a duty contained in BabyAge's by-laws that requires defense in a lawsuit, is a breach of a duty contained in a written agreement and is therefore analogous to a contract.

9

compensable in money, cannot satisfy the irreparable injury requirement." Id. Such is the situation here. Indeed, plaintiff's original cause of action raises just such a claim and seeks monetary damages to recompense plaintiff for expenses incurred defending an earlier lawsuit. Plaintiff has not established irreparable injury from not granting an injunction.

### iii. Harm to the Non-Moving Party

Plaintiff argues that the defendant's corporate bylaws require the disputed indemnity, and that provision was thus presumably adopted to protect the corporation's interest. No harm can come to the corporation, plaintiff argues, from enforcing the company's bylaws. BabyAge responds by pointing out that plaintiff has the resources to file a claim, and therefore can presumably be expected to defend any compulsory counterclaims that arise from the initial action. Moreover, paying for plaintiff's defense of the counterclaims would be a strain on the company's resources. If defendant were to prevail on this action in the underlying case, plaintiff may lack the resources to compensate defendant for those expenditures. Finally, defendant insists that plaintiff asks for an injunction with unclean hands and is therefore not entitled to equitable relief.

The court finds that this factor weighs slightly in the non-moving party's favor. Plaintiff's argument largely repeats the reasons he believes he should prevail on the merits of the claim. If the plaintiff is wrong that the company's bylaws require the payment, then his argument that no harm can come to the non-moving party is

misplaced. Still, plaintiff is correct that no real harm could come to the defendant from having to pay a sum the company is obligated by law to play. At the same time, the defendant is correct to argue that harm would come in having to pay a sum that would need to be remitted at the end of the litigation. If plaintiff were to emerge insolvent from this action, such a sum might never be repaid. Thus, there is a possibility of harm to the non-moving party from the action. This, like the other factors, is insubstantial in comparison to the fact that money damages are available to the defendant at the end of the action, and equitable relief therefore unnecessary.

### iv. Public Interest

Plaintiff finally argues that the public interest favors an injunction. Law in both Pennsylvania and Delaware–where BabyAge is incorporated–provide for the advancement of litigation expenses to officers. Enforcing these laws would serve the public interest, plaintiff argues. Defendant argues that the public interest would not be served by allowing plaintiff to appropriate trade secrets and then forcing defendant to pay a claim to protect the misappropriated information.

The court finds that the public interest is minimal in this matter. As explained above, this dispute arises from a contractual dispute between two private parties. The public's interest in such disputes is minimal. The issue here is not one of federal Constitutional law or statutory interpretation, but instead relates to the interpretation of an employment contract and corporate bylaws. The case also does not raise any unresolved questions of contract law, but instead asks the court to

apply settled doctrines.  Under these circumstances, the public does not have an interest in the particular outcome of the case, and the factor weighs against granting an injunction.

**Conclusion**

The factors governing whether the court should grant a preliminary injunction and order payment of plaintiff's costs and attorney's fees in defending the counterclaim weigh in favor of the non-moving party.  While there is a legitimate dispute over whether plaintiff could prevail on the merits of his claim for indemnification, the court finds that monetary relief would be available to the plaintiff if he ultimately proves that the provisions of the contract apply to him.  As such, there is need for the extraordinary measure of an injunction to protect plaintiff's rights.  The court will therefore deny the motion for a preliminary injunction.  An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHLOMO Y. HECHT, | : | No. 3:10cv724 |
|     Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | |
| BABYAGE.COM, INC.; | : | |
| JACK Keifer; and | : | |
| JOSEPH SPONHOLTZ, | : | |
|     Defendants | : | |

## ORDER

**AND NOW**, to wit, this 30th day of September 2010, plaintiff's motion for a preliminary injunction (Doc. 30) is hereby **DENIED**.

                                          **BY THE COURT:**

                                          s/ James M. Munley
                                          **JUDGE JAMES M. MUNLEY**
                                          **UNITED STATES DISTRICT COURT**