# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHLOMO Y. HECHT, : | No. 3:10cv724 |
|     Plaintiff : | |
| : | (Judge Munley) |
| v. : | |
| BABYAGE.COM, INC.; : | |
| JACK KEIFER; and : | |
| JOSEPH SPONHOLTZ, : | |
|     Defendants : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court is plaintiff/cross-defendant Shlomo Hecht's motion to dismiss Defendant BabyAge.com's counterclaim. Having been fully briefed, the matter is ripe for disposition.

**Background**

This case arises out of Plaintiff Shlomo Hecht's employment with Defendant BabyAge.com ("BabyAge"). According to plaintiff's complaint, defendants retained him as Chief Technology Officer for BabyAge on May 8, 2008. (Complaint (Doc. 1) (hereinafter "Complt.") at ¶ 8). Though plaintiff had been retained as a "consultant," he received the Chief Technology Officer title. (Id.). BabyAge issued plaintiff business cards that identified him as Chief Technology Officer. (Id. at ¶ 9). The company retained plaintiff for three years, at a salary of $150,000 per year. (Id. at ¶ 10). Plaintiff wrote, rewrote and maintained BabyAge's software and fulfillment

system.  (Id. at ¶ 11).  He remained on call twenty-four hours a day, seven days a week.  (Id. at ¶ 12).

Plaintiff alleges he suffered religious discrimination at work.  He is Jewish.  (Id. at 13).  Sometime in January 2009, BabyAge's Chief Executive Officer Defendant Jack Keifer confronted plaintiff, telling him "in an angry tone" that Keifer "did not want a 'Jew Boy Club' in the office."  (Id. at ¶ 14).  Keifer also repeatedly "expressed negativity" about Jewish holidays and made clear to plaintiff that Keifer disapproved of plaintiff observing such holidays or taking vacation days to celebrate them.  (Id. at ¶ 15).  Keifer also allegedly used offensive language about Jewish people, calling them "fucking Jews" and members of a "blood sucking tribe."  (Id. at ¶ 16).  BabyAge's Chief Operating Officer and General Counsel, Defendant Joseph Sponholtz, likewise allegedly used such language, referring to plaintiff and other Jewish employees as "fucking Jews."   Plaintiff also alleges that Keifer and other BabyAge executives schemed to eliminate all high-level Jewish employees from BabyAge, including him.  (Id. at ¶ 18).  He insists that Defendant Keifer told him that a certain employee had been fired "because he was a 'typical fucking Jew, that is corrupt through and through.'"  (Id. at ¶ 19).  Plaintiff therefore contends that he suffered "disparate treatment" and "severe and pervasive harassment" as a result of his Jewish religion/ethnicity.  (Id. at ¶¶ 20-21).

Plaintiff also alleges that BabyAge breached the employment contract between the parties.  On August 25, 2009, Keifer approached plaintiff and verbally

2

informed him that his employment contract had been terminated. (Id. at ¶ 23). Plaintiff maintains that defendants terminated him because of his Jewish religion/ethnicity. (Id. at ¶ 24). BabyAge filed a civil action against plaintiff, alleging various claims during his employment with the company. (Id. at ¶ 25). These claims, plaintiff contends, served as pretext to realize defendants' goal of terminating his expensive three-year contract. (Id. at ¶ 26). Plaintiff defended himself in that lawsuit, and on December 26, 2009 BabyAge voluntarily dismissed the case. (Id. at ¶ 27). Plaintiff incurred expenses in defending this civil action, and he insists that his contract with BabyAge obligated the company to indemnify him for these expenses. (Id. at ¶¶ 31-32). Plaintiff requested this compensation, but the company refused to pay. (Id. at ¶¶ 33-34).

On August 25, 2009, Defendants Sponholtz and Keifer allegedly told forty-five BabyAge employees that plaintiff had been fired because he was a thief. (Id. at ¶ 28). Defendants allegedly repeated these statements numerous times to consultants and third-party vendors with whom plaintiff had worked during his employment at BabyAge. (Id. at ¶ 29). Plaintiff insists that he had not stolen anything from BabyAge and was not a thief of any kind. (Id. at ¶ 30). Plaintiff contends that defendants' actions caused him economic harm and severe emotional distress. (Id. at ¶ 39).

Plaintiff's complaint contains five counts. Count I alleges that defendants discriminated against the defendant because of his religion in violation of 42 U.S.C.

3

§ 1981. Count II alleges a breach of plaintiff's employment contract against the defendants. Count III alleges that defendants breached their fiduciary duty to plaintiff, as an officer of the corporation, when they refused to indemnify him for the expenses incurred in the previous lawsuit. Count IV alleges defamation of character. Count V claims invasion of privacy.

Defendants then answered the complaint, and Defendant BabyAge filed a counterclaim. (See Doc. 11). Plaintiff filed a motion to dismiss that action, and defendant filed an amended counterclaim. (See Docs. 14, 19). In the counterclaim, BabyAge alleges that plaintiff received access to the company's trade secrets upon being hired as a consultant, including BabyAge's "proprietary database scheme, back-end management system, and source codes." (Counterclaim (Doc. 19) at ¶60). BabyAge contends that plaintiff used this proprietary information for his own benefit and for the benefit of BabyAge competitors such as GiftBrand.com and idiapers.com. (Id. at ¶ 61). The company further contends that BabyAge took reasonable steps to protect the trade secrets by instituting polices to regulate their access and dissemination. (Id. at ¶ 62). Plaintiff had access to these trade secrets, and BabyAge alleges that he provided this information to GiftBrand.com, a company he and his wife owned. (Id. at ¶¶ 64-65). Plaintiff used BabyAge's trade secrets to benefit a competitor and damage BabyAge. (Id. at ¶ 66). Such actions, BabyAge contends, constituted a misappropriation of trade secrets and a breach of the consulting agreement. (Id. at ¶ 69). BabyAge also contends that plaintiff's actions

4

constituted unfair competition under Pennsylvania law and violated the Federal Computer Fraud and Abuse Act. (Id. at ¶¶ 74, 81). The counterclaim also raises counts of breach of contract, breach of duty of loyalty and breach of fiduciary duty.

Plaintiff filed a motion to dismiss counts II, V and VI of this counterclaim. (Doc. 22). The parties then briefed the issue, bringing the case to its present posture.

**Jurisdiction**

Plaintiff brings this claim pursuant to the 42 U.S.C. § 1981. This court therefore has jurisdiction pursuant to 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The court has jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) ("In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article II of the United States Constitution.").

**Legal Standard**

Plaintiff/counterclaim defendant seeks to dismiss portions of the counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6). When a defendant files a motion pursuant to Rule 12(b)(6), all well-pleaded allegations of the complaint must be viewed as true and in the light most favorable to the non-movant to determine

5

whether "under any reasonable reading of the pleadings, the plaintiff may be entitled to relief." Colburn v. Upper Darby Township, 838 F.2d 663, 665-66 (3d Cir. 1988) (citing Estate of Bailey by Oare v. County of York, 768 F.3d 503, 506 (3d Cir. 1985), (quoting Helstoski v. Goldstein, 552 F.2d 564, 565 (3d Cir. 1977) (per curiam)). The court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citations omitted). The court does not have to accept legal conclusions or unwarranted factual inferences. See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).

The federal rules require only that plaintiff provide "'a short and plain statement of the claim showing that the pleader is entitled to relief,'" a standard which "does not require 'detailed factual allegations,'" but a plaintiff must make "'a showing, rather than a blanket assertion, of entitlement to relief' that rises 'above the speculative level.'" McTernan v. City of York, 564 F.3d 636, 646 (3d Cir. 2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007)). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). Such "facial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference

6

that the defendant is liable for the conduct alleged." Id.

**Discussion**.

Plaintiff argues that defendant's claims for unfair competition, breach of duty of loyalty, and breach of fiduciary duty should be dismissed because those claims are "displaced" by the Pennsylvania Uniform Trade Secrets Act ("PUTSA"), 12 P.S.A. §§ 5301, et seq. That statute, plaintiff argues, provides the sole remedy for misappropriation of trade secrets under Pennsylvania law. Defendant agrees that PUTSA is the sole remedy for misappropriation claims under Pennsylvania law, but argues that these counts are based on conduct beyond plaintiff's alleged misappropriation of trade secrets and the motion should therefore be denied. Defendant additionally contends that at this point in the litigation the court cannot determine whether the their counterclaim concerns an actual trade secret. Dismissing the claim on preemption grounds would therefore be premature.

The PUTSA allows plaintiffs to recover damages for losses due to the misappropriation of trade secrets. 12 Pa. C. S. A. § 5304. Under the act, a trade secret is "[i]nformation, including a formula, drawing, pattern, compilation including a customer list, program, device, method, technique or process that: (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure ro use" and "(2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." 12 Pa. C.S.A.

§ 5302. The PUTSA preempts common law causes of action for "misappropriation of a trade secret," but excludes from this preemption "(1) contractual remedies, whether or not based upon misappropriation of a trade secret; (2) other civil remedies that are not based upon misappropriation of a trade secret; or (3) criminal remedies, whether or not based upon misappropriation of a trade secret." 12 Pa. C.S. § 5308.

Courts have found that under the PUTSA "preemption exists to the extent that defendants' counterclaims are based on the same conduct that is said to constitute a misappropriation of trade secrets." Youtie v. Macy's Retail Holding, Inc., 653 F. Supp.2d 612, 620 (E.D. Pa. 2009). The defendant/counterclaim plaintiff insists that the plaintiff/counterclaim defendant's motion should be denied because the counterclaim is based on conduct distinct from Hecht's alleged misappropriation of trade secrets. See, e.g., Hecny Transp., Inc. v. Chu, 450 F.3d 402, 405 (7th Cir. 2005 (finding that the Illinois Trade Secrets Act, based on the same model legislation as the PUTSA, does not preempt claims unrelated to the trade secrets, since "[a]n assertion of trade secret in a customer list does not wipe out claims of theft, fraud, and breach of the duty of loyalty that would be sound even if the customer list were a public record.").

Count II alleges that plaintiff engaged in unfair competition by misappropriating BabyAge's proprietary business information, including licensed copies of Microsoft software and sharing that information with GiftBrand.com, a

8

competitor. Count V alleges a breach of the duty of loyalty against Hecht, contending that Hecht used "confidential information acquired" from BabyAge against that company by "divulging, communicating, and misusing the trade secrets and other confidential information of BabyAge" to competitors, not providing his "full energies" to his work for BabyAge, having an interest in a direct competitor like GiftBrand.com, removing, deleting or destroying software licensed by BabyAge and attempting to hire BabyAge employees for a competing business. Count VI alleges a breach of fiduciary duty by Hecht. Though denying that Hecht served as an officer of the company, BabyAge contends that if he were an officer he had a fiduciary duty of loyalty, fair dealing and good faith, and that he violated this duty by "knowingly and recklessly misappropriating BABYAGE's trade secrets, confidential information, proprietary database schema, back-end management systems, source codes, and its licensed copies of the Microsoft SQL Server software" to benefit competitors.

    These allegations clearly point to misappropriation of trade secrets as part of the basis for the state-law counterclaims. If those claims alleged only that conduct as the basis for the action, the court would agree that they are preempted by the PUTSA. Other allegations within the complaints, however, are allegations that would constitute the named torts even if the conduct involved information that did not constitute a trade secret within the meaning of the PUTSA. The counterclaim alleges, for instance, that Hecht breached his fiduciary duty to the company by supplying competitors with software purchased under a license from Microsoft.

9

Whatever the trade-secret status of that software, Hecht could surely be liable if the counterclaim plaintiff can prove those facts. The court could not, therefore, dismiss all of the counterclaims on preemption grounds.

Even for conduct that involves alleged misappropriation of trade secrets, the court also concludes that finding the claims preempted would at this point be premature. To prevail under the terms of the PUTSA, the counterclaim plaintiff would have to demonstrate the existence of a trade secret, and that determination requires discovery. As such, the court will deny the motion on these grounds. See, e.g., Rober Dubois N. Am., Inc. v. Thomas, No. 05cv2566, 2006 WL 2645149 at *3 (M.D. Pa. September 14, 2006) (finding that "'because it cannot be established at this juncture [the motion to dismiss stage] whether the confidential information at issue in this case is a trade secret, the Court cannot find that [Plaintiff's] claims are preempted [by the UTSA].") (quoting Stone Castle Finn., Inc. v. Friedman, Billlings, Ramsey & Co., Inc., 191 F. Supp. 2d 652, 659 (E.D. Va. 2002)); Motorola, Inc. v. Lemko Corp., 609 F.Supp.2d 760, 771 (N.D. Ill. 2009) (finding that Trade Secret Act "plaintiffs are not required to plead highly specific facts on improper trade secret use, because such facts often will not be available before discovery."). The court will therefore deny the motion to dismiss.

**Conclusion**

For the reasons stated above, the court will deny plaintiff/counterclaim defendant's motion to dismiss the amended counterclaim. An appropriate order

10

follows.

11

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHLOMO Y. HECHT, | : | No. 3:10cv724 |
|     Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | |
| BABYAGE.COM, INC.; | : | |
| JACK KEIFER; and | : | |
| JOSEPH SPONHOLTZ, | : | |
|     Defendants | : | |

## ORDER

**AND NOW**, to wit, this 6th day of October 2010, plaintiff's motion to dismiss the defendant's amended counterclaim (Doc. 22) is hereby **DENIED**.

                                       **BY THE COURT:**

                                       s/ James M. Munley
                                       JUDGE JAMES M. MUNLEY
                                       UNITED STATES DISTRICT COURT